J-A28023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID BARROW | : | |
| | : | |
| Appellant | : | No. 685 EDA 2022 |

Appeal from the PCRA Order Entered February 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009416-2016

BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 06, 2023**

David Barrow appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Upon review, we affirm.

This case stems from events that occurred on August 14-15, 2016 when Barrow stole Hafiz Bailey's (victim) .380 Jenkins semiautomatic weapon from the victim's home.  Following a foot chase, Barrow fired the weapon at the victim.  The shot missed and the victim subsequently called 911.[1]  Both Barrow

---

[1] Regarding this incident, Barrow was charged on a separate docket and acquitted of all charges.

and the victim[2] were taken into custody and brought to the Philadelphia County 35th Police District. We adopt the following additional factual history from **Commonwealth v. Barrow**, 227 A.3d 446 (Pa. Super. 2020) (Table).

[Upon being taken to the Philadelphia County 35th Police District station and being placed in separate holding cells, Barrow] began belligerently yelling out to [the victim], telling him that the detective was coming to get [the victim] soon[,] asked [the victim] not to say anything about the stolen gun, and told [the victim] they needed to be on the same page. [Barrow] proceeded to ask [the victim] why he was snitching on [Barrow], to which [the victim] responded[,] "just leave it alone." On August 15, 2016, [at approximately] 8:15 [p.m.], Police Officer Henry Lewis was assigned to escort [defendants, including Barrow and the victim,] to the closed[-]circuit television (CCTV) room to communicate remotely with the arraignment judge. Once each person was arraigned, they [were given the opportunity to make a phone call. Barrow was] arraigned prior to [the victim] and was already speaking on the pay phone when [the victim] was sent to the back of the room to use the pay phone.

As [the victim] was headed towards the pay phones, he saw [Barrow,] who proceeded to ask him what he had said to the detectives. [The victim] responded that he had told [the detectives] the truth. During this time, Officer Lewis heard unintelligible words coming from the pay phones, banging against a trash can, and a phone falling. [] Upon arriving at the pay phone area, Officer Lewis saw [Barrow] flip [the victim] onto his back, head first, onto the concrete floor and a trash can. Then, [Barrow] fell on top of [the victim] and began to choke him by placing his arm around [the victim's] neck. [Barrow stopped choking the victim when the police officers separated them. The victim's] head injury required 5 staples [].

**Id.** at 2-4, quoting Trial Court Opinion, 2/25/19, at 2-4.

_____

[2] The victim had been placed into custody for carrying a firearm without a permit and, subsequently, found not guilty of that offense. N.T. Jury Trial, 5/9/17, at 6.

On August 15, 2016, Barrow was arrested and charged with aggravated assault,[3] simple assault,[4] firearms not to be carried without a license,[5] carrying firearms in public in Philadelphia,[6] possessing instruments of a crime,[7] intimidation of a witness or victim,[8] and retaliation against a witness, victim or party.[9] On May 16, 2017, Barrow was convicted by a jury of intimidation of a witness or victim, retaliation against a witness, victim or party, and simple assault and acquitted of the remaining offenses. On August 17, 2017, Barrow made an oral motion for extraordinary relief, which was denied on the record. On the same day, Barrow was sentenced to an aggregate term of eight to twenty years' incarceration followed by six years of probation. Barrow, through trial counsel, filed a motion for reconsideration on August 31, 2017, which was denied as untimely on September 14, 2017. Barrow filed a *pro se* notice of appeal September 20, 2017, more than 30 days after he was sentenced. This Court directed Barrow to show cause as to why his appeal

_____

[3] 18 Pa.C.S.A. § 2702.

[4] *Id.* at § 2701.

[5] *Id.* at § 6106.

[6] *Id.* at § 6108.

[7] *Id.* at § 907.

[8] *Id.* at § 4952.

[9] *Id.* at § 4953.

- 3 -

should not be quashed as untimely. Barrow failed to comply with the order and this Court quashed his appeal on March 29, 2018.

Barrow subsequently filed a PCRA petition on April 8, 2018, seeking reinstatement of his direct appeal rights, *nunc pro tunc*, wherein Barrow raised an ineffective assistance of counsel claim for trial counsel failing to file a post-sentence motion and direct appeal. The PCRA court reinstated Barrow's direct appeal rights on May 3, 2018. On May 6, 2018, Barrow filed a post-sentence motion to vacate the verdict and Barrow's sentence, which was denied on June 8, 2018. Barrow did not file an appeal. On November 15, 2018, Barrow filed a PCRA petition requesting reinstatement of his appellate rights, *nunc pro tunc*, due to PCRA counsel's failure to file a direct appeal of the aforementioned order, which the court granted on November 16, 2018.

On November 26, 2018, Barrow filed a notice of appeal, *nunc pro tunc*. On November 30, 2018, however, Barrow filed a *pro se* PCRA petition, which was dismissed on December 12, 2018 due to his pending appeal in this Court. On February 28, 2020, this Court affirmed Barrow's judgment of sentence. **See Barrow**, **supra**. The Pennsylvania Supreme Court denied allowance of appeal on October 5, 2020.

Barrow filed a timely *pro se* PCRA petition[10] on November 3, 2020 and the PCRA court subsequently appointed counsel. Through counsel, Barrow

_____

[10] A PCRA petition filed after the reinstatement of a petitioner's direct appeal rights, *nunc pro tunc*, is considered a first PCRA petition        for        timeliness
*(Footnote Continued Next Page)*

- 4 -

filed an amended PCRA petition on May 2, 2021, raising ineffective assistance of counsel claims and requesting a new trial. The Commonwealth filed a motion to dismiss and the PCRA court subsequently filed a notice of intent to dismiss without an evidentiary hearing pursuant to Pa.R.Crim.P. 907. Barrow did not file a response. The court dismissed the petition on February 7, 2022. Barrow filed a notice of appeal on March 6, 2022. Barrow and the PCRA court have complied with Pa.R.A.P. 1925. Barrow raises the following issues for our review.

1. Whether the PCRA court erred by dismissing [Barrow's] PCRA petition when clear and convincing evidence was presented to establish that trial counsel was ineffective for failing to subpoena and present available exculpatory evidence, and failing to file a motion to compel disclosure of the exculpatory evidence[?]

2. Whether the PCRA court erred by dismissing [Barrow's] PCRA petition when clear and convincing evidence was presented to establish that appellate counsel was ineffective for failing to raise all appropriate issues and preserve all appropriate claims in the statement of matters complained on appeal[?]

3. Whether the PCRA court erred by dismissing [Barrow's] PCRA petition when clear and convincing evidence was presented to establish violations of [Barrow's] constitutional rights under the United States and Pennsylvania Constitutions, including ineffective assistance of counsel, multiple instances of prosecutorial misconduct, and a conviction based on evidence that did not establish [Barrow's] guilt beyond a reasonable doubt[?]

---

purposes. **See Commonwealth v. Turner**, 73 A.3d 1283, 1286 (Pa. Super. 2013) (explaining "when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition will be considered a first PCRA petition for timeliness purposes" (citations and footnote omitted)).

4. Whether the PCRA court erred by failing to grant an evidentiary hearing[?]

Appellant's Brief, at 9.

Our scope and standard of review of the denial of a PCRA petition are well-settled:

> [O]ur scope of review is limited by the parameters of the [A]ct. Our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. Moreover, in general we may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action; this is so even if we rely on a different basis in our decision to affirm.

*Commonwealth v. Heilman*, 867 A.2d 542, 544 (Pa. Super. 2005) (quotations and citations omitted).

Regarding the denial of an evidentiary hearing, this Court has determined that

> there is no absolute right to an evidentiary hearing on a [PCRA] petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019); *see Commonwealth v. Bennett*, 462 A.2d 772, 773 (Pa. Super. 1938) ("[U]nless the PCR[A] court is certain of the *total lack of merit* of an issue raised in a PCR[A] petition, a hearing should be held on the issue") (citation omitted, emphasis in original).

In his first two claims, Barrow alleges that trial and appellate counsel were ineffective in failing to file a motion to compel disclosure of video footage of the altercation from the 35th Police District and to preserve this claim on appeal, respectively. Appellant's Brief, at 17-19. Barrow alleges that the security video shows the victim as the initial aggressor of the altercation that took place in the pay phone area, and, thus, exonerates Barrow. Barrow is afforded no relief.

One avenue of relief under the PCRA is to demonstrate "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness[,] there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

The PCRA court determined that Barrow failed to satisfy the first prong of the ineffective assistance of counsel test because Barrow's assertion that the exculpatory video exists is speculative.  PCRA Court Opinion, at 7.

Instantly, the record supports the PCRA court's determination that the existence of the alleged exculpatory surveillance video of the altercation is speculative because even if the CCTV footage had been recorded and preserved, the altercation took place out of view of the cameras.  Officer Lewis testified that on August 15, 2016, he was orchestrating arraignment court when he, "heard a commotion in the back.  And then [he] got up and ran to the back."  N.T. Jury Trial, 5/11/17, at 157.  Officer Lewis testified that the arraignment area was "about twenty-five feet" away from the pay phone area and you need to "turn around two corners to get to it."  *Id.* at 181.  Additionally, this live feed was for the purpose of carrying out arraignment court proceedings.  *Id.* at 154 (Officer Lewis testifying that during arraignment court, "the defendants see the judge on a TV screen and they talk back and forth").  Moreover, the Commonwealth stated in its motion to dismiss this PCRA petition that, "in an abundance of caution, [it] searched all of its records relating to this case and found no reference to any alleged video recordings inside the 35th district."  Commonwealth Motion to Dismiss PCRA Petition, 9/7/21, at 7.

In light of the foregoing, the PCRA court's determination that neither trial nor appellate counsel were ineffective is supported by the record.  Inasmuch as the existence of the alleged exculpatory video of the incident is

speculative, the trial court did not err in denying an evidentiary hearing on this issue. *Rivera*, *supra*; *Holt*, *supra*.

Barrow's third issue, with three sub-issues, alleges that his constitutional rights were violated due to prosecutorial misconduct. Barrow's first sub-issue alleges that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963) in its inadvertent failure to disclose the allegedly exculpatory video footage. Appellant's Brief, at 20. Barrow claims the video is material and favorable because it would provide "irrefutable evidence that [the victim] was the initial aggressor" during the altercation within in the 35ᵗʰ Police District or it constitutes impeachment evidence. *Id.* at 21. Barrow concludes there is a reasonable probability the trial would have had a different outcome had the video been disclosed. Barrow is afforded no relief.

To establish a *Brady* violation, a defendant must show: (1) the Commonwealth suppressed evidence either willfully or inadvertently; (2) the evidence at issue is favorable to the defendant; and (3) the evidence was material. *Commonwealth v. Chambers*, 807 A.2d 872, 887 (Pa. 2002), citing *Brady*, *supra* at 87. Evidence is favorable to the defendant where, "if disclosed and used effectively, it may make the difference between conviction and acquittal." *Chambers*, *supra* at 888. Additionally, "when the reliability of a witness may be determinative of guilt or innocence, non-disclosure of evidence effecting that witness' credibility runs afoul of [*Brady's*] disclosure requirement." *See Commonwealth v. Moose*, 602 A.2d 1265, 1272 (Pa. 1992). In *Commonwealth v. Smith*, 17 A.3d 873 (Pa. 2011), our Supreme

Court stated, "The Commonwealth cannot violate **Brady** by suppressing evidence that does not exist." **Id.** at 891, citing **Commonwealth v. Lewis**, 743 A.2d 907 (Pa. 2000) (no **Brady** violation where Commonwealth did not have information requested).

As discussed above, Barrow's claim that video evidence exists is completely speculative. The Commonwealth found no video records from inside the 35th Police District. Additionally, as per Officer Lewis' testimony, even if footage of arraignment court was preserved, the altercation took place out of view of the camera. Accordingly, the PCRA court did not err in denying Barrow's alleged **Brady** violation without an evidentiary hearing. **Heilman**, **supra**.

Barrow's second and third subclaims allege that the Commonwealth committed prosecutorial misconduct by presenting perjured testimony and failing to prove his convictions beyond a reasonable doubt, respectively. Upon a review of the record, we determine that although neither of these claims were discussed in the trial court opinion, the record is complete and, thus, there is no need to remand. **Commonwealth v. Flemister**, 946 MDA 2021 (Pa. Super. filed May 16, 2022).[11]

---

[11] In **Flemister**, this Court remanded the record to the PCRA court having *sua sponte* raised the possibility that the petitioner was serving an illegal sentence where the sentencing transcript made no mention of the merger between the petitioner's attempted murder and aggravated assault convictions. The Court remanded to permit the PCRA to determine whether the record explained the sentence and to answer the merger question and to allow parties to file
*(Footnote Continued Next Page)*

To be eligible for collateral relief under the PCRA, a petitioner must demonstrate that his conviction or sentence resulted from one of the circumstances listed in the eligibility provision, 42 Pa.C.S.A. § 9543(a)(2). Petitioner must also demonstrate that the issues raised have not been previously litigated or waived. 42 Pa.C.S.A. § 9544. An issue is previously litigated if "the highest court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or . . . . [the issue] has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S.A. § 9544(a)(2) and (3). An issue is waived "if the petitioner could have raised it but failed to do so before trial, at trial . . . . on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b); *Commonwealth v. Blakeney*, 108 A.3d 739, 74 (Pa. 2014) ("[A]ny claim deriving from an event at trial could have been challenged at trial and raised on direct appeal. To the extent such a claim was not raised at trial, it is waived under the PCRA.").

Barrow's second sub-claim alleges that the Commonwealth committed prosecutorial misconduct where it permitted perjured testimony. Specifically, Barrow claims that the Commonwealth was "provided ample evidence [] to question the validity of all of the [victim's] statements" because the victim was proven to be the initial aggressor in the *first incident* between the two

_____

supplemental briefs addressing the legality of sentencing issue. Unlike in *Flemister*, the record is complete with regard to these issues.

- 11 -

men, although the victim's initial statement to the police indicated otherwise. Appellant's Brief, at 21. Barrow's claim is meritless.

Barrow cites to **Napue v. Illinois**, 360 U.S. 264 (1959) for the proposition that the protection of false testimony extends to witness credibility. In **Napue**, the witness, who had been serving a 199-year sentence for the same murder for which the petitioner had been on trial, falsely testified that the prosecutor did not offer the witness a reduction in sentence in exchange for the witness' testimony. **Id.** at 265. There, the United States Supreme Court determined that the failure of a prosecutor to correct the testimony of the witness which he **knew** to be false denied the petitioner due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. **Id.** at 265, 271. Accordingly, this claim is reviewable under 42 Pa.C.S.A. § 9543(a)(2)(i).[12]

However, unlike in **Napue**, Barrow does not demonstrate why or how the Commonwealth **knows** the victim perjured regarding the incident in the 35th Police District. Inasmuch as Barrow relies on the alleged video evidence of the incident, the Commonwealth searched for the video and did not find it. Further, even if the victim lied regarding who was the initial aggressor during

_____

[12] Pursuant to 42 Pa.C.S.A. § 9543(a)(2)(i), a claim is cognizable on collateral review if the conviction or sentence resulted from "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

- 12 -

the first incident, it has no bearing on whether the Commonwealth knew the victim's testimony had been untruthful.

Moreover, the record shows that the victim conceded that he was the initial aggressor during the first incident. The victim's statement to the police, while in Officer Genio Santiago's police vehicle on the way to the 35th Police District, indicated that the victim confronted Barrow. *See* N.T. Jury Trial, 5/11/17, at 46 (Officer Genio Santiago of the Philadelphia Police Department testifying that victim conceded he confronted Barrow regarding victim's stolen firearm); *id.* at 89 (victim testifying he "approached" Barrow outside Barrow's home).

In light of the foregoing, the trial court did not err in dismissing Barrow's claim that the Commonwealth permitted the victim's perjured testimony without an evidentiary hearing.

Barrow's third sub-claim contends that the Commonwealth failed to prove his convictions beyond a reasonable doubt. Specifically, Barrow claims that the victim's testimony was unsupported by any factual evidence and Officer Lewis did not testify as to who initiated the altercation at the police station. *See* Appellant's Brief, at 22. Barrow is afforded no relief.

Here, Barrow appealed his witness intimidation and retaliation convictions on sufficiency and weight of the evidence grounds on direct appeal, and, thus, these are previously litigated. *Barrow*, 227 A.3d at 9 (this Court affirming Barrow's judgment of sentence); *see also* 42 Pa.C.S.A. § 9544(a)(2). Additionally, although Barrow did not challenge his simple assault

- 13 -

conviction on direct appeal, he could have, and, thus, it is waived.[13]  **See** 42 Pa.C.S.A. § 9544(b), **see also Barrow**, 227 A.3d at 4 n.2 ("[Barrow] does not challenge in any respect his simple assault conviction.").  **See Blakeney**, **supra**.

In light of the foregoing, the PCRA court's determination that neither trial nor appellate counsel were ineffective or that the Commonwealth committed prosecutorial misconduct is supported by the record.  **Holt**, **supra**; **Smith**, **supra**.  Additionally, the PCRA court did not err in denying an evidentiary hearing because, inasmuch as Barrow's claim that video evidence exists is completely speculative, there are no genuine issues of material fact and Barrow's claim lacks any merit.  **Maddrey**, **supra**; **Bennett**, **supra**.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date: 4/6/2023*

---

[13] Additionally, Barrow does not argue that direct appellate counsel was ineffective for failing to challenge his conviction for simple assault on grounds of sufficiency.

- 14 -